NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSEPH COLLICK, | CIVIL ACTION NO. 08-5120 (MLC) |
| Plaintiff, | **MEMORANDUM OPINION** |
| v. | |
| WEEKS MARINE, INC., et al., | |
| Defendants. | |

**COOPER, District Judge**

Plaintiff, Joseph Collick, brought this action against his former employer, defendant Weeks Marine, Inc. ("Weeks"), and defendant Haztek, Inc. ("Haztek"), to recover damages for personal injuries. (Dkt. entry no. 24, Am. Compl.) Weeks filed cross-claims against Haztek seeking, inter alia, "complete indemnity for all judgment(s) or settlement(s)" and "all defense costs." (Dkt. entry no. 25, Weeks Answer and Cross-cl. at 13-16.) Weeks now moves for summary judgment in its favor and against Haztek, pursuant to Federal Rule of Civil Procedure ("Rule") 56, and requests that the Court enter an order (1) "requiring Haztek to defend and to indemnify Weeks with regard to plaintiff's claims asserted against Weeks in this action," and (2) awarding Weeks attorneys' fees and costs. (See dkt. entry no. 167, Notice of Weeks Mot.; dkt entry no. 170, Weeks

Br. at 25.) Haztek opposes the Motion. (See dkt. entry no. 175, Haztek Br. in Opp'n to Mot. for Summ. J. ("Opp'n Br.").)

The Court will resolve the Motion on the papers and without oral argument pursuant to Local Civil Rule 78.1(b). The Court, for the reasons stated herein, will deny the Motion.

I. **Summary Judgment Standard**

Motions for summary judgment are governed by Rule 56, which provides that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The movant has the initial burden of proving the absence of a genuinely disputed material fact relative to the claims in question. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." Lamont v. New Jersey, 637 F.3d 177, 181 (3d Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). The burden on the movant may be discharged by pointing out to the district court that there is an absence of evidence supporting the nonmovant's case. See Celotex, 477 U.S. at 323.

If the movant demonstrates an absence of genuinely disputed material facts, then the burden shifts to the nonmovant to

demonstrate the existence of at least one genuine issue for trial. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Williams v. Bor. of W. Chester, Pa., 891 F.2d 458, 460-61 (3d Cir. 1989). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., 475 U.S. at 587 (internal quotation marks omitted). The nonmovant cannot, when demonstrating the existence of issues for trial, rest upon argument; the nonmovant must show that such issues exist by referring to the record. See Fed.R.Civ.P. 56(c)(1).

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmovant and draw all reasonable inferences in that party's favor. Scott v. Harris, 550 U.S. 372, 380 (2007); Wishkin v. Potter, 476 F.3d 180, 184 (3d Cir. 2007). If the nonmovant fails to demonstrate that at least one genuine issue exists for trial, then the Court must determine whether the movant is entitled to judgment as a matter of law. See McCann v. Unum Provident, 921 F.Supp.2d 353, 357 (D.N.J. 2013). "A movant is entitled to judgment as a matter of law if, at trial, no reasonable jury could find for the non-moving party." Id.

**II. Application of Local Civil Rule 56.1**

Local Civil Rule 56.1(a), a companion to Rule 56, (1) requires parties to present argument by reference to the materials in the record, and (2) allows the Court to deem the movant's factual assertions undisputed, where a nonmovant fails to present an argument by reference to the record. See Fed.R.Civ.P. 56(c), (e)(2); Carita v. Mon Cheri Bridals, LLC, No. 10-2517, 2012 WL 3638697, at *1-2 (D.N.J. Aug. 22, 2012). In pertinent part, Local Civil Rule 56.1(a) provides that:

> On motions for summary judgment, the movant shall furnish a statement which sets forth material facts as to which there does not exist a genuine issue . . . . The opponent of summary judgment shall furnish, with its opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's statement, <u>indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion</u>; any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion.

L.Civ.R. 56.1(a) (emphasis added).

A movant's statement of facts and a nonmovant's related response serve a vital purpose, in that they assist the Court in identifying whether material facts are truly in dispute. See Am. Plaza, LLC v. Marbo Cross Shop, LLC, No. 08-5963, 2010 WL 455349, at *2 (D.N.J. Feb. 3, 2010). Local Civil Rule 56.1(a) thus puts the onus on the parties, rather than the Court, to

4

find evidence of record supporting their respective arguments. See Baker v. Hartford Life Ins. Co., No. 08-6382, 2010 WL 2179150, at *2 n.1 (D.N.J. May 28, 2010) ("It is not the Court's responsibility to comb the record on behalf of Plaintiff's counsel."), aff'd, 440 Fed.Appx. 66 (3d Cir. 2011); N.J. Auto. Ins. Plan v. Sciarra, 103 F.Supp.2d 388, 408 (D.N.J. 1998) ("[I]t is the responsibility of each party to support its own contentions with a proper basis in the record of the case."). "Given the vital purpose that such rules serve, litigants ignore them at their peril." McCann, 921 F.Supp.2d at 358 (quoting Cabán Hernández v. Philip Morris USA, Inc., 486 F.3d 1, 7 (1st Cir. 2007)).

Weeks, pursuant to Local Civil Rule 56.1(a), filed a statement of facts in support of the Motion. (See generally dkt. entry no. 169, Weeks Statement of Material Undisputed Facts ("Weeks SOF").) Haztek filed a response to the Weeks SOF. (See generally dkt. entry no. 174-1, Haztek Resp. to Weeks SOF.) Haztek also filed a Counter Statement of Material Facts. (See generally dkt. entry no. 174-2, Haztek Counter Statement of Material Facts ("Haztek Counter SOF").) The Court will consider the facts recited by Weeks and Haztek, and any material fact not disputed will be deemed undisputed for purposes of the Motion. The Court will incorporate the undisputed facts into the following findings of fact.

## III. FINDINGS OF FACT

### A. The Agreement Between Weeks and Haztek

Weeks, a marine contractor, was hired by the United States Navy to reconstruct a pier at the Earle Naval Weapons Station in Colts Neck, New Jersey (the "Earle Project"). (Weeks SOF at ¶¶ 1-2.) The Navy contract for the Earle Project required Weeks to have a Certified Safety Professional ("CSP") on site whenever work was being performed at the pier. (Id. at ¶ 3.) Weeks contracted with Haztek to provide a CSP to serve as Site Safety Officer at the Earle Project. (See id. at ¶ 5; Haztek Resp. to Weeks SOF at ¶ 5.)

On July 12, 2005, Haztek sent a Proposal to Weeks for the services of a CSP, proposing a rate of $91.00 per hour for the CSP. (Haztek Counter SOF at ¶ 2; Opp'n Br. at 20.) Haztek began to provide a CSP to work for Weeks at the Earle Project during the week of July 12, 2005. (Haztek Counter SOF at ¶ 1.) Haztek's Proposal does not contain any terms concerning choice-of-law, insurance requirements, or indemnification. (Id. at ¶ 3; see dkt. entry no. 174-4, Decl. of Timothy J. Jaeger, Ex. B, Haztek Proposal.) Haztek's Proposal requested that Weeks sign and return a copy of the Proposal and send a purchase order to confirm Weeks's acceptance of the Proposal's terms and conditions. (See Haztek Proposal at 2.)

While Weeks never signed and returned a copy of the Proposal to Haztek, Haztek was nevertheless already providing services to Weeks. (See Opp'n Br. at 20.) On September 2, 2005, Weeks issued a purchase order to Haztek regarding the CSP for the Earle Project. (See Opp'n Br. at 20; Haztek Counter SOF at ¶ 5; see generally dkt. entry no. 174-5, Decl. of Timothy J. Jaeger, Exs. C-D, Weeks Purchase Order (the "Purchase Order").) The Purchase Order indicated a labor rate of $91.00 per hour for the CSP. (See Opp'n Br. at 21; Purchase Order.) The front of the Purchase Order does not contain any terms regarding choice-of-law, or requirements for insurance or indemnification. (See Haztek Counter SOF at ¶ 8; Purchase Order.) The front of the Purchase Order does not make any reference to the "Purchase Order Terms and Conditions" listed on the rear side of the Purchase Order. (See Haztek Counter SOF at ¶¶ 9-10; Purchase Order.) The Purchase Order Terms and Conditions do not contain any terms requiring Haztek to obtain insurance for Weeks, but do contain indemnification and choice-of-law language. (See Haztek Counter SOF at ¶¶ 11-13; Purchase Order.) The rear side of the Purchase Order provides, in relevant part:

> 11. PROPERTY AND PERSONAL LIABILITY: Vendor [(Haztek)] shall save harmless and indemnify us [(Weeks)] from and against all claims, suits (including counsel fees and other expenses of suits, whether groundless or not), judgments and awards on account of any damage to property or injury (including death) to person (including any damage or injury to

7

> the property or the person of any employee of yours or
> ours) which may be caused or alleged to have been
> caused in whole or in part by, or which may occur or
> be alleged to have occurred in connection with the
> execution of this order on your part or the use of the
> items furnished hereunder, excepting our sole
> negligence.
>
> . . . .
>
> 15. CHOICE OF LAW: The parties thereto agree that
> this contract shall be interpreted in accordance with
> the laws of the State of New Jersey.

(Purchase Order.) No one from Haztek signed the Purchase Order. (See Haztek Counter SOF at ¶ 14; Purchase Order.)

On November 10, 2005, Weeks and Haztek executed a Contractor Indemnification Agreement ("CIA") that was drafted by Weeks. (See Weeks SOF at ¶19; Haztek Resp. to Weeks SOF at ¶19; see generally dkt. entry no. 174-7, Decl. of Timothy J. Jaeger, Ex. E, CIA.)[1] The CIA provides, in relevant part:

---

[1] Much of the disagreement between Weeks and Haztek revolves around the CIA. Weeks argues that the CIA applies to the Earle Project, and that the plaintiff's claims against Weeks trigger Haztek's duty to indemnify under the CIA. (See Weeks Br. at 5, 14.) Haztek argues that the CIA "does not specify that it pertains to the Earle Project," the terms of the CIA "are inconsistent with the terms on the rear of the Purchase Order," and Steven Jones, the managing partner of Haztek, "testified that he did not know if the [CIA] pertained to the Earle Project." (See Haztek Resp. to Weeks SOF at ¶ 19.) Haztek therefore argues that "Weeks has failed to demonstrate that the terms of the [CIA] are part of the agreement between the parties." (See Opp'n Br. at 18.)

8

The Work performed hereunder shall consist of: contracted services as detailed in purchase orders or as otherwise agreed to by the parties hereto.

In addition to the terms and conditions set forth in any purchase orders, written or oral agreements or other contractual obligation, with respect to the referenced Work and in consideration therefore, the Contractor agrees to the following:

Contractor shall indemnify and hold WMI harmless from all liability, loss, cost or damage, including attorney fees, from claims for injuries or death from any cause, of Contractor's employees or the employees of its subcontractors or agents, or by reason of claims of any person or persons, including WMI, for injuries to person or property, from any cause occasioned in whole or in part by any act or omission of Contractor, its agents, employees, subcontractors or suppliers, whether or not it is contended WMI contributed thereto in whole or in part, or was responsible therefor by reason of non-delegable duty. If, however, this indemnification is subject to limitation by applicable law, then the indemnification shall be similarly limited to conform with such law, it being the intention that this indemnification shall be as broad as permitted by applicable law.  WMI may retain any money due or to become due for the Work performed, sufficient to indemnify it against such injuries, claims, suits, actions, costs or damages should any such claim arise.  Contractor shall, at WMI's sole option, assume the defense in WMI's behalf of any action or proceeding commenced against WMI, whether or not Contractor is named as a party, as part of Contractor's aforementioned obligation to indemnify and hold WMI harmless.

Except as otherwise provided herein, the obligation of the Contractor to indemnify and hold WMI harmless is absolute and is not dependent upon any question of negligence on its part or on the part of its agents, officers or employees.  The approval of WMI of the methods of doing the Work or the failure of the WMI to

call attention to improper or inadequate methods or to
require a change in methods or direct the Contractor
to take any particular precautions or to refrain from
doing any particular thing shall not excuse the
Contractor in case of any such injury to person or
damage to property.

Prior to commencement of any operations by or on
behalf of Contractor relating to the Work, Contractor
shall, at his sole expense, procure and maintain and
provide WMI Certificates of Insurance and, at WMI's
request, certified copies of policies, evidencing
issuance of the forms of insurance in companies and
amounts and deductibles, if any, acceptable to WMI as
stated in Schedule A – Insurance Requirements
attached.

. . . .

This agreement shall be subject to and governed by the
general maritime law of the United States.  To the
extent that the foregoing general maritime law may be
deemed inapplicable, the laws of the State of New
Jersey shall govern and apply.

In the event that the Contractor fails to honor its
obligation hereunder and WMI must employ an attorney
to enforce the provisions herein, Contractor agrees to
reimburse WMI for costs and attorney fees WMI is
obligated to expend in enforcing the terms of this
agreement or defending itself from any claims covered
by this agreement.

(CIA ("WMI" referring to Weeks).)

### B. The Plaintiff's Injury

The plaintiff, who at the time was a Weeks employee, was performing construction work at the Earle Project on November 17, 2006, when he was injured.  (See Weeks SOF at ¶ 26; Opp'n Br. at 2.)  The CSP did not witness the accident, as he was with

10

Weeks's Corporate Safety Director inspecting the location of another accident on the construction site.  (See Weeks SOF at ¶¶ 28-29; Haztek Resp. to Weeks SOF at ¶¶ 28-29.)

The plaintiff brought this action against Weeks and Haztek. (See Weeks SOF at ¶¶ 32-34; Haztek Resp. to Weeks SOF at ¶¶ 32-34; Am. Compl.)  Weeks subsequently filed a cross-claim against Haztek for the purported breach of Haztek's contractual obligations to defend and indemnify Weeks and to procure and maintain insurance for Weeks.  (See Weeks SOF at ¶¶ 39-40; Haztek Resp. to Weeks SOF at ¶¶ 39-40; Weeks Answer and Cross-cl. at 13-16.)  Haztek denies that it breached any contractual obligations to defend and indemnify Weeks and to procure and maintain insurance coverage for Weeks.  (See Weeks SOF at ¶¶ 42-43; Haztek Resp. to Weeks SOF at ¶¶ 42-43.)

**IV. ANALYSIS**

Weeks argues that it is entitled to summary judgment because it "entered into a valid and binding indemnification agreement [with Haztek] in connection with Haztek's provision of safety personnel at Weeks'[s] worksite at the [Earle Project]." (See Weeks Br. at 1.)  Weeks argues that the CIA is applicable to the Earle Project because "[t]he terms of the CIA clearly referred to purchase orders already in existence."  (See Weeks Reply Br. at 2 (referring to CIA provision that states: "In addition to the terms and conditions set forth in any purchase

orders . . . the Contractor agrees to the following").) Weeks maintains that "[the CIA] clearly set forth that it is governed by maritime law" and that it "unambiguously states that Haztek shall indemnify Weeks against claims arising from Haztek's work, even if Weeks is found to be at fault in whole or in part." (See Weeks Br. at 1.)

Haztek counters that the Motion "must be denied because Weeks has failed to prove the specific terms of the agreement between Week[s] and Haztek with respect to the Earle Project, and has failed to demonstrate that the indemnification language applies to the Earle Project." (See Opp'n Br. at 18.) Haztek argues that "[t]he CIA is significant to the extent that it is devoid of any reference to the Earle Project," and that "[t]here is absolutely no indication what exactly the CIA is and to what it applies." (See id. at 22.) Haztek also notes that "Steve Jones of Haztek did sign the CIA, but he did not know what the agreement meant and did not know whether it applied to the Earle Project or some other project." (See id.) Haztek further argues that New Jersey Law, and not maritime law, governs the agreement between Haztek and Weeks (1) because the agreement is non-maritime in nature, and (2) because of the inconsistency and ambiguity of the Purchase Order and CIA. (See id. at 24-25.)

The law applicable to the agreement between Weeks and Haztek is contingent upon discerning the parties' contractual

intent. This is because the Purchase Order contains a choice-of-law provision stating that it is to be interpreted in accordance with New Jersey law, and the CIA contains a choice-of-law provision stating it is to be governed by maritime law. (See Purchase Order; CIA.) Because, as discussed infra, the Court finds that the disagreement between Weeks and Haztek as to what terms govern their agreement gives rise to a genuine issue of material fact, the Court is unable to determine which choice-of-law provision to apply at this time. The Court will therefore discuss both New Jersey law and maritime law at this stage.

Under New Jersey law, "[a] contract arises from offer and acceptance, and must be sufficiently definite that the performance to be rendered by each party can be ascertained with reasonable certainty." Weichert Co. Realtors v. Ryan, 608 A.2d 280, 284 (N.J. 1992) (internal quotation marks omitted). An enforceable contract is created where the parties agree on essential terms and manifest an intention to be bound by those terms. See id. "If the terms of the contract are susceptible to at least two reasonable alternative interpretations, an ambiguity exists." Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am., 948 A.2d 1285, 1289 (N.J. 2008). "If the contract is ambiguous, so that parole [sic] evidence is necessary to resolve the issue of intent, the meaning of the contract should be left

13

for a fact finder . . . ." Nadel v. Starkman, A-4204-08T1, 2010 WL 4103626, at *9 (N.J. App. Div. Oct. 20, 2010); see also Fitts v. Chase Manhattan Mortg. Corp., A-0814-05T5, 2006 WL 3432296, at *2 (N.J. App. Div. Nov. 30, 2006) (explaining that where facts needed to interpret contract are in dispute, genuine issues of fact can exist).

Similarly, under maritime law, "[t]he primary purpose and function of a court in the interpretation of a maritime contract is to ascertain the intention of the parties." F.W.F., Inc. v. Detroit Diesel Corp., 494 F.Supp.2d 1342, 1357 (S.D. Fla. 2007), aff'd, 308 Fed.Appx. 389 (11th Cir. 2009). The language of a contract "will be deemed ambiguous where it is reasonably susceptible to more than one interpretation." See id. at 1357-58. "When a [maritime] contract is ambiguous, it is for the jury to determine the meaning of its terms, subject to proper instructions and based upon evidence of the surrounding circumstances and the practical construction of the parties." Royal Ins. Co. of Am. v. Orient Overseas Container Line Ltd., 525 F.3d 409, 422 (6th Cir. 2008).

In support of the Motion, Weeks contends that the following facts are undisputed: (1) the CIA was executed with respect to the Earle Project; (2) under the CIA, Haztek was contractually obligated to defend and indemnify Weeks for personal injury claims, including plaintiff's claims; (3) the CIA obligated

Haztek to procure and maintain insurance coverage for Weeks that would correspond to plaintiff's claims; (4) under the CIA, Haztek is obligated to pay Weeks's attorneys' fees; and (5) maritime law applies to the subject indemnification agreement. (See Weeks SOF at ¶¶ 19, 21, 22, 24; Weeks Br. at 12.) If these facts were truly uncontested, as Weeks asserts, then the contractual obligations in this case would be clear and unambiguous and Weeks would most likely be entitled to summary judgment.

These facts, however, are contested by Haztek, and Haztek disagrees with Weeks as to how the parties' agreement should be interpreted. Haztek states that "[t]here are three documents that arguably comprise the dealings between Haztek and Weeks with respect to the Earle Project – Haztek's Proposal, Weeks'[s] Purchase Order and Weeks'[s] Contractor Indemnification Agreement." (Opp'n Br at 20.) While Haztek acknowledges that "there was some agreement in effect between Weeks and Haztek with regard to the Earle Project," Haztek stresses that the parties' intentions cannot be ascertained from these documents themselves, as Weeks did not sign Haztek's Proposal, Haztek did not sign Weeks's Purchase Order, and Weeks has not demonstrated that the CIA was executed with respect to the Earle Project. (See id. at 18.)

15

The parties' conflicting positions at this stage in the litigation are based on their disparate positions regarding what constitutes the agreement of the parties.  Much of their disagreement arises from the ambiguous language of the CIA -- i.e., "[i]n addition to the terms and conditions set forth in any purchase orders . . . the Contractor agrees to the following" -- and whether they intended this language to cause the CIA to apply retrospectively to the Earle Project.  While this language could be reasonably interpreted to cause the CIA to apply to the Earle Project, it is susceptible to another interpretation.  A subsequent provision in the CIA states: "Prior to commencement of any operations by or on behalf of Contractor relating to the Work, Contractor shall, at his sole expense, procure and maintain and provide WMI Certificates of Insurance."  (CIA.)  In light of this provision, which conceivably creates a condition precedent to the "commencement of any operations" under the CIA, a reasonable juror could determine that the parties did not intend for the CIA to apply retrospectively to the Earle Project, as operations commenced on the Earle Project several months before the CIA was executed.

The Court acknowledges Weeks's argument that Steven Jones "admitted that the CIA applies to Haztek's work at the Earle [Project]."  (See Weeks Reply Br. at 3.)  In so arguing, Weeks refers to Steven Jones's deposition testimony:

16

> A. So I don't know what prompted us signing [the
> CIA] all of a sudden on November 10th. I don't
> know why we would have done that or why we would
> have been asked to do that, but . . .
>
> Q. But nonetheless it was asked of you to look at it
> and to sign it?
>
> A. Correct.
>
> . . . .
>
> Q. And that was part of the agreement for the work
> that you undertook for Weeks, pursuant to their
> purchase orders including the Earle Project,
> correct?
>
> Mr. Jaeger: Objection to the form of the
> question.
>
> A. Correct.

(Dkt. entry no. 174-15, Decl. of Timothy J. Jaeger, Ex. M, Jones Dep. 108:23-109:7, 109:16-23, Oct. 16, 2012.) This language must, however, be read in conjunction with Steven Jones's subsequent deposition testimony:

> Q. Any document, any thing, any communication
> whatsoever, what is there, if anything, that
> would help you refresh your recollection as to
> whether the contractor indemnification agreement
> marked as Jones Exhibit 3 was signed by you in
> connection with the Earle Project, some other
> project or all the projects that you were
> performing for Weeks?
>
> A. There is nothing.
>
> Q. So then your answer is you don't know whether you
> signed Jones Exhibit 3 as part of the Earle
> project or some other project?

**A.** I can't say for sure one way or the other, no.

(Jones Dep. 185:14-186:6.) The Court finds that Steven Jones's testimony across these two deposition passages is equivocal. The Court will not, at this time, conclude that he intended the CIA to apply retrospectively to the Earle Project.

Because the dispute over which document or documents governed the parties' agreement is a question of the parties' intent, and because the resolution of that dispute necessarily impacts both the indemnification and choice-of-law issues, there is a genuine issue of material fact. The dispute over the contract terms cannot be resolved by the purported contract documents, by the pleadings, or by the evidence submitted in support of the Motion. A genuine issue of material fact therefore exists, precluding summary judgment. See Fed.R.Civ.P. 56(e).

**V. CONCLUSION**

The parties disagree as to what document or documents governed their agreement, and a solution is not apparent in the purported contract documents, in the pleadings, or in the other evidence submitted in support of the Motion. Because this disagreement gives rise to a genuine issue of material fact with respect to the terms that governed the parties' agreement,

Weeks's motion for summary judgment is denied. The Court will issue an appropriate order.

                                                <u>s/ Mary L. Cooper</u>
                                                **MARY L. COOPER**
                                                United States District Judge

Dated: November 18, 2013