**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| JOSEPH COLLICK, | : | CIVIL ACTION NO. 08-5120  (MLC) |
| | : | |
| Plaintiff, | : | |
| | : | **MEMORANDUM OPINION** |
| v. | : | |
| | : | |
| WEEKS MARINE, INC., et al. | : | |
| | : | |
| Defendants. | : | |
| | : | |
| WEEKS MARINE, INC., | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| EVANSTON INSURANCE CO. | : | |
| | : | |
| Defendant. | : | |
| | : | |

**COOPER, District Judge:**

Third-party plaintiff, Weeks Marine, Inc. ("Weeks"), commenced this action against

Evanston Insurance Company ("Evanston"), seeking coverage as an additional insured under

Haztek, Inc.'s ("Haztek") commercial general liability ("CGL") policy with Evanston.  (See

generally dkt. 25.) [1]  Weeks sought coverage for the claims asserted by Plaintiff, Joseph

---

[1] The Court will cite to the documents filed on the Electronic Case Filing System ("ECF") by
referring to the docket entry numbers by the designation of "dkt."  Pincites reference ECF pagination.

Collick ("Collick"), against Weeks when he was injured on a Weeks' marine construction project.  (See id.)

Evanston now moves for summary judgment under Federal Rule of Civil Procedure ("Rule") 56 as to all claims asserted against it, and seeks to dismiss the third-party complaint. (See generally dkt. 219.)  Weeks cross-moves for summary judgment.  (See generally dkt. 255.)  The cross-motions for summary judgment are opposed and fully briefed.  (See dkt. 219-3; dkt. 255-24; dkt. 260.)  The Court will determine the motion on the papers and without oral argument pursuant to Local Civil Rule 78.1(b).  For the reasons stated below, the Court will grant Evanston's motion for summary judgment and deny Weeks' cross-motion for summary judgment.

## BACKGROUND

### I.      Factual Background

### A.      Weeks' Contracts with United States Navy and Haztek

In 2004, Weeks entered into a contract with the United States Navy ("Navy") to rebuild a pier at the Earle Naval Weapons Station (hereinafter, "the Earle Project").  (See dkt. 219-1 at 1; dkt. 255-23 at 2.)  The Navy contract required Weeks to have an on-site Certified Safety Professional when work was being performed at the Earle Project.  (See dkt. 255-23 at 2.)  Weeks entered into a contract with Haztek to provide those safety services.  (See id.) Pursuant to the contract, Haztek was required to:

> [I]ndemnify and hold WMI [Weeks] harmless from all liability, loss, cost or damage, including attorney fees, from claims for injuries or death from any cause, of Contractor's [Haztek's] employees or the employees of its subcontractors or agents or by reason of claims of any person or persons, including WMI [Weeks], for injuries to person or property, from any cause

2

occasioned in whole or in part by any act or omission of Contractor [Haztek]. . . .

(Dkt 255-8 at 2.)

Haztek was also required to procure and maintain insurance on behalf of Weeks.  (See id. at 3.)  Haztek obtained insurance from Evanston for the Earle Project.  (See dkt. 219-1 at 2.)

### B.      Haztek's Insurance Policy with Evanston

Evanston insured Haztek under CGL Policy Number 08PKG01558 (the "2008 Policy").  (See id.; dkt. 255-23 at 4.)[2]  The 2008 Policy included: (1) occurrence-based coverage for bodily injury and property damage liability; and (2) a claims made professional liability endorsement.  (See dkt. 255-9 at 2.)

### 1.      The 2008 Policy: Bodily Injury & Property Damage Liability

The occurrence-based coverage for bodily injury and property damage liability provides in pertinent part:

SECTION I–COVERAGES
COVERAGE A. BODILY INJURY & PROPERTY
DAMAGE LIABILITY

1.  Insuring Agreement.

    a.  We will pay those sums that the Insured becomes legally obligated to
        pay as damages because of "bodily injury" or "property damage" to
        which this insurance applies.  We will have the right and duty to defend
        any "suit" seeking those damages.  We may at our discretion
        investigate any "occurrence" and settle any claim or "suit" that may
        result.  But:

---

[2] The 2008 Policy period provided coverage to Haztek from April 17, 2008 to April 17, 2009.  (See dkt. 219-1 at 2; dkt. 255-23 at 4.)

(1)The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SUPPLEMENTARY PAYMENTS–COVERAGES A AND B.

b.  This insurance applies to "bodily injury" and "property damage" only if:

(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

(2) The "bodily injury" or "property damage" occurs during the policy period.

c.  Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

2.  Exclusions.

This Insurance does not apply to:

\*        \*        \*

d.  Workers Compensation & Similar Laws

Any obligation of the insured under a workers compensation disability benefits or unemployment compensation law or any similar law.

e.  Employer's Liability

"Bodily Injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business; or

*     *     *

This exclusion applies

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.  This exclusion does not apply to liability assumed by the insured under an "insured contract".

*     *     *

g. Aircraft, Auto or Watercraft

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion does not apply to:

(1)  A watercraft while ashore on premises you own or rent;

(2)  A watercraft you do not own that is:

(a)  less than 26 feet long; and

(b)  not being used to carry persons or property for a charge;

(3)  Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(4)  Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft or watercraft; or

5

> (5) "Bodily injury" or "property damage" arising out of the
> operation of any of the equipment listed in paragraph f.(2) or
> f.(3) of the definition of "mobile equipment".

SECTION V–DEFINITIONS
. . .
13. "Occurrence" means an accident, including continuous or repeated
exposure to substantially the same general harmful conditions.

(Dkt. 255-9 at 5–16.)

## 2.      The 2008 Policy: Professional Liability

The 2008 Policy also includes a professional liability endorsement, which provides in

pertinent part:

CLAIMS MADE COVERAGE

*       *       *

Coverage: Professional Liability

1. Insuring Agreement

> a. We will pay those sums that the insured becomes legally obligated to
> pay as damages because of "claims" that result from the rendering or
> failure to render "professional services" for others to which this
> insurance applies.  We will have the right and duty to defend the
> insured against any "suit" seeking those damages.

> b. This insurance applies to "claims" that result from the rendering or
> failure to render "professional services" only if:

>> 1.   The damages are caused by an alleged act, error, or omission
>> that takes place within the "coverage territory"; and

>> 2.   The alleged act, error, or omission takes place after the
>> Retroactive Date, if any, shown in the Declarations and
>> before the end of the policy period; and

3.  A "claim" is first made against you in accordance with paragraph c. below during the policy period or any Extended Reporting Period, if applicable.

\*       \*       \*

2.  Exclusions

This insurance does not apply to "claim(s)":

\*       \*       \*

Employer's Liability
n. Based upon or arising out of the injury to any present or former "employee" or "executive officer" of any insured, including but not limited to wrongful termination, discrimination, or any unfair employment practice.

SECTION VI–DEFINITIONS

The following definitions shall apply:

\*       \*       \*

2.  "Coverage territory" means:

a. the United States of America . . .

3.  "Claim" or "Claims" means a request or demand received by you or the Company for money or services, including institution of "suit" or arbitration proceedings against you, seeking damages.

4.  "Employee" includes temporary and leased staff working on behalf of and under direct supervision of you, but only for "Professional Services" performed for you.

5.  "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

6.  "Professional Services" means those functions performed for others by you or on your behalf that are related to your practice as a consultant, engineer, architect, surveyor, laboratory or construction manager.

(Dkt. 255-10 at 4–14.)

7

## II.    Procedural Background

In October 2008, Collick filed his complaint against Weeks and Haztek for personal injuries arising from Collick's work on the Earle Project.  (See generally dkt. 1, dkt. 24.)  In April 2009, Weeks filed a third-party complaint against Evanston for coverage under the 2008 Policy procured by Haztek.  (See generally dkt. 25.)  Weeks alleged, inter alia, that Evanston "failed and/or refused to defend and insure Weeks against said claims in breach of [the 2008 Policy.]"  (Id. at 17.)

Evanston answered this third-party complaint and denied any coverage to Weeks under the 2008 Policy.  (See dkt. 9 at 5.)  In July 2009, the Magistrate Judge entered a scheduling order that permitted the addition of new parties or amendment to the pleadings by September 14, 2009.  (See dkt. 43 at 2.)  In April 2015, Weeks filed a motion for leave to amend its third-party complaint to incorporate facts disclosed during discovery, i.e., to assert a claim under the 2006 Package Policy ("2006 Policy"), in addition to the 2008 Policy which had already been pleaded.  (See dkt. 214.)[3]  The Magistrate Judge denied the motion in an April 6, 2015 Letter Order on the grounds that Weeks: (1) knew or should have known the existence of the 2006 Policy by July 2010; and (2) failed to show good cause to amend the third-party complaint five years after the scheduling order deadline.  (See dkt. 229; dkt. 230.)  Weeks appealed from the Magistrate Judge's letter order, which this Court denied in its December 15, 2015 Order and Opinion.  (See dkt. 241.)  Weeks then moved for

---

[3] In July 2010, Evanston produced a copy of the 2008 Policy, as well as a copy of the 2006 Package Policy, to Weeks in response to Weeks' interrogatories requesting "all relevant insurance policies issued by Evanston to Haztek."  (See dkt. 235 at 6.)

reconsideration of this Court's order pursuant to Local Civil Rule 7.1.  (See dkt. 242.)  This Court denied Weeks' motion for reconsideration in its March 11, 2016 Order and Opinion. (See dkt. 244.)

As Weeks' motion to amend the third-party complaint was pending, Evanston filed a motion for summary judgment, arguing that: (1) Collick's occurrence, or accident, "falls outside the 2008 Policy period," and (2) the employer's liability exclusion under the occurrence-based portion of the 2008 Policy precludes coverage to Weeks.  (See dkt. 219; dkt. 219-3 at 2.)  Evanston's motion for summary judgment was stayed pending the resolution of Weeks' motion to amend its third-party complaint.  (See dkt. 224.)  Upon this Court's denial of Weeks' motion for reconsideration, the Magistrate Judge lifted the stay on Evanston's motion for summary judgment.  (See dkt. 247.)  Weeks then filed a cross-motion for summary judgment.  (See generally dkt. 255.)

Before this Court are the parties' cross-motions for summary judgment on the issue of whether Evanston's 2008 Policy precludes coverage for Collick's 2006 accident.  (See dkt. 219, dkt. 255.)

## DISCUSSION

## I.     Applicable Law

### A.     Legal Standard: Summary Judgment

Rule 56 provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  The non-movant must then present evidence that raises a genuine dispute of material fact.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250

(1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is genuine if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party." Lamont v. New Jersey, 637 F.3d 177, 181 (3d Cir. 2011) (internal citation and quotation omitted). This evidence may include "citing to particular parts of materials in the record" or a "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1)(A)–(B).

### B. Legal Standard: Duty to Defend

Under New Jersey law, "[t]he interpretation of an insurance contract on undisputed facts is a question for the court to decide as a matter of law and can be the basis for summary judgment." American Cas. Co. of Reading, Pennsylvania v. Continisio, 819 F.Supp. 385, 396 (D.N.J. 1993) (citation omitted). The issue of whether a claim against an insured creates a duty for the insurer to defend is based upon a comparison of the allegations contained in the underlying complaint with the language of the insurance policy. Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 173 (1992). If the facts, as alleged in the underlying complaint, fall within the scope of the policy's coverage, then "the duty to defend arises, irrespective of the claim's actual merit." See id. If the facts of the underlying complaint are ambiguous, such that it is unclear whether the claims fall within the scope of coverage, then any ambiguities should be resolved in favor of the insured. See id.; see also Doto v. Russo, 140 N.J. 544, 556 (1995).

### C.      Legal Standard: Exclusionary Clauses

Exclusionary clauses are presumed valid if they are "specific, plain, clear, prominent and not contrary to public policy." Princeton Ins. Co. v. Chunmuang, 151 N.J. 80, 95 (1997) (internal quotation omitted). They are typically construed narrowly with the burden "on the insurer to bring the case within the exclusion." Memorial Props., LLC v. Zurich Am. Ins. Co., 210 N.J. 512, 534–35 (2012). If the terms used in an exclusionary clause are ambiguous, "courts apply the meaning that supports coverage rather than the one that limits it." Id. "However, if the words used in an exclusionary clause are clear and unambiguous, 'a court should not engage in a strained construction to support the imposition of liability." Id.

## II.      Parties' Arguments

Evanston argues generally that: 1) the 2008 Policy does not apply; and 2) the employer liability exclusion precludes coverage to Weeks. (See generally dkt. 219-3.) Weeks argues generally that: 1) it is covered by the 2008 Policy's professional liability endorsement; and 2) the employer liability exclusion does not preclude coverage. (See generally dkt. 255-24.) Weeks argues in the alternative that any ambiguity in the language of the 2008 Policy's should be construed in favor of Weeks and against Evanston. (See id.)

### A.      Evanston's Arguments

Evanston first argues that Collick's accident falls outside the 2008 Policy period. Evanston states that the parties' insuring agreement provides that Evanston "will pay for those sums that the insured [Weeks] becomes legally obligated to pay as damages because of "bodily injury" . . . which this insurance applies. . . ." (Dkt. 219-3 at 11.) See also Background.I.B.1., supra. Evanston notes that this coverage extends only to those bodily

injuries that occur during the 2008 Policy period.  (Dkt. 219-3 at 11.)  An occurrence is defined under the 2008 Policy as "an accident, including continuous exposure to substantially the same general harmful conditions."  (Id.)  Here, Evanston argues that the 2008 Policy does not cover Collick's accident because coverage only extends to Weeks for liability incurred from April 17, 2008 to April 17, 2009.  (See id.)  Collick's accident occurred in 2006, which, Evanston argues, is "long before the inception date of the [2008] Policy."  (Id.)

Evanston next argues that the occurrence-based employer liability exclusion of the 2008 Policy precludes coverage to Weeks because New Jersey law provides that "an Employer's Liability exclusion in a [CGL] policy excludes claims brought by an employee against his employer."  (Id. at 12 (citing Am. Motorists Ins. Co. v. L-C-A Sales Co., et al., 155 N.J. 29 (N.J. 1998))).  Here, Evanston notes that "Collick alleges that he is Weeks's employee and that his suit against Weeks arises out of his employment with Weeks;" thus, even if the 2008 Policy applied to Weeks, the employer liability exclusion precludes coverage.  (See dkt. 219-3 at 13.)

Evanston also argues that the 2008 Policy's workers compensation exclusion precludes coverage for Weeks "[t]o the extent Weeks seeks coverage under the [2008] Policy against the claims of Collick for Weeks's LHWCA [Longshoremen and Harbor Workers Compensation Act] compensation liability. . . ."  (Id.)  See also Background I.B.1., supra.

**B.     Weeks' Arguments**

Weeks first notes that it "reserves, and does not waive, all of its rights to coverage under Evanston's 2006 policy," which is not at issue in this present motion.  (Dkt. 255-24 at 11.)[4]

Weeks argues that it is covered by the professional liability endorsement because: (1) the alleged act or omission took place within the "coverage territory," the United States; (2) the alleged act or omission took place after the retroactive date in the policy, April 17, 2001; and (3) the claim Collick made against Weeks occurred during the 2008 Policy period.  (See id. at 14.)  See also Background I.B.2, supra.  Weeks further notes the professional liability endorsement applies to "professional services," including construction management.  (See id.)  Here, Weeks asserts that it was the construction manager at the Earle Project, and that Collick is seeking damages against Weeks for bodily injury caused by Weeks' negligence.  (See id.)

Weeks further argues that the employer liability exclusion under the professional liability endorsement does not preclude coverage in this action.[5]  Weeks notes that under the endorsement, an employee is defined as "temporary and leased staff working on behalf of and under direct supervision of you, but only for 'Professional Services' performed for you."

---

[4] For a discussion of the procedural history regarding the 2006 Policy, see Background.II., supra.

[5] Weeks notes that the employer liability exclusion under the occurrence-based portion of the 2008 policy is inapplicable to the issue of coverage under the professional liability endorsement, and concedes that the occurrence-based portion of the 2008 Policy requires for the occurrence to have transpired during the policy period.  (See dkt. 255-24 at 5, 15.)

(See dkt. 255-10 at 14).  See also Background, I.B.2, supra.  Weeks notes that "professional services" is defined as "those functions . . . that are related to your practice as a . . . construction manager."  (See dkt. 255-10 at 14; dkt. 255-24 at 17.)  Here, Weeks asserts that Collick worked as a dockbuilder, and he did not "perform[] functions related to Weeks' role as construction manager."  (See dkt. 255-24 at 17.)  Thus, Weeks maintains that: 1) the professional liability endorsement applies to Weeks because of its role as the Earle Project construction manager; and 2) the endorsement's employer liability exclusion does not preclude coverage because Collick did not perform professional services for Weeks.

Weeks also argues in the alternative that if the Court finds the professional liability endorsement is ambiguous, any such ambiguity should be construed in favor of coverage.[6] (See id. at 18.)  Weeks notes that "[u]nder New Jersey law, to the extent language in an insurance policy is ambiguous it must be construed in favor of coverage. . . ."  (See id. (citing Elizabethtown Water Co. v. Hartford Cas., 998 F.Supp. 447, 456 (D.N.J. 1998); Nestle Foods v. Aetna Cas., 842 F.Supp. 125, 131 (D.N.J. 1993))).

### C.    Evanston Reply

Evanston argues in reply that: 1) Weeks "fundamentally misconstrues the purpose of professional liability/errors and omission coverage"; and 2) the vehicle and employer's liability exclusions contained in the professional liability endorsement preclude coverage to Weeks.  (See dkt. 260 at 4.)

---

[6] Weeks notes that it believes the language is unambiguous, and that the 2008 Policy "clearly limits the definition of employee to include only those employees that performed 'professional services' for Weeks."  (Dkt. 255-24 at 18.)

Evanston first argues that Weeks' professional liability endorsement is intended to provide coverage to Weeks "for claims that result from the rendering or failure to render professional services for others."  (See id. at 5.)  Evanston notes that professional liability coverage does not extend to a Jones Act claim because "Weeks was not sued by Collick for rendering or [failing] to render professional services for others," but rather for "fail[ing] to provide him with a safe place to work."  (See id. at 6.)

Evanston next argues that the professional liability endorsement's vehicle exclusion precludes coverage.  (See id. at 6–7.)  The vehicle exclusion provides that the 2008 Policy professional liability endorsement does not apply to claims:

> Arising from the ownership, maintenance, use, or entrustment of others of any aircraft, "auto", or watercraft owned or operated by or rented or loaned to you .
> . . .

(Dkt. 255-10 at 6.)

Evanston argues that the vehicle exclusion precludes coverage because "Collick has sued Weeks in its capacity as . . . vessel owner employer."  (See dkt. 260 at 7.)  Evanston further asserts that the professional liability endorsement's employer's liability exclusion precludes coverage because "the fact that the policy adds to the definition of an 'employee' to include 'temporary and leased staff' does not mean that the [e]mployer's [l]iability exclusion would not apply to traditional employees."  (See id.)[7]

---

[7] The Court received a sur-reply submitted by Weeks, which specifically addresses Evanston's arguments that: 1) the professional liability endorsement does not provide coverage to Weeks for Collick's allegations of negligence; and 2) various exclusions under the endorsement further preclude coverage.  (See generally dkt. 265).  The Court will address Weeks' sur-reply arguments only as they apply to the Court's analysis.  See generally Discussion.III.A–C, infra.

### III.    Analysis

For the reasons set forth below, the Court finds that Weeks may not seek coverage under the 2008 Policy's professional liability endorsement because the causes of action set forth in the underlying complaint fall squarely within the 2008 Policy's exclusionary clauses. Accordingly, the Court will grant Evanston's motion for summary judgment and deny Weeks' cross-motion for summary judgment.

#### A.    Coverage under the 2008 Policy: Bodily Injury & Property Damage Liability

The parties agree that Weeks is precluded from seeking coverage under the occurrence-based portion of the 2008 Policy because Collick's accident occurred in 2006. (See dkt. 219-3 at 10–11; dkt. 255-24 at 5.)  Thus, the Court need not consider whether the employer's liability exclusion, as it pertains to the occurrence-based portion of the 2008 Policy, precludes coverage for Weeks.

#### B.    Coverage under the 2008 Policy: Professional Liability Endorsement

The Court must next consider whether Evanston has a duty to defend Weeks under the 2008 Policy's professional liability endorsement.  The issue of whether a claim against an insured creates a duty for the insurer to defend is based upon a comparison of the allegations contained in the underlying complaint with the language of the insurance policy.  See Voorhees, 128 N.J. at 173.

Here, Collick's underlying complaint against Weeks alleges violations of the Jones Act, LHWCA, and general maritime causes of action, including unseaworthiness.  (See generally dkt. 24.)  Collick's complaint alleges, inter alia, that Weeks negligently caused

16

Collick's injury by "allowing and permitting the vessel and its appurtenances to be in a dangerous, defective, and hazardous condition," "operating the vessel in a negligent manner, rendering the vessel unsafe," "failing to warn [Collick] of the dangerous and hazardous conditions," "failing to provide [Collick] with a seaworthy vessel and a safe place to work," "failing to promulgate and enforce proper and safe rules of seamanship in the supervision of said work," and "failing to supply proper gear and equipment."  (Id. at 7.)

The language of the 2008 Policy's professional liability endorsement provides that:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "claims" that result from the rendering or failure to render "professional services" for others to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.

(Dkt. 255-10 at 4.)

The endorsement further defines "professional services" as: "those functions performed for others by you or on your behalf that are related to your practice as a consultant, engineer, architect, surveyor, laboratory, or construction manager."  (Id. at 14.) The New Jersey Superior Court's Appellate Division has construed limiting phrases within professional service endorsements—like "result from," "arising out of," or "originating from"—as requiring "a substantial nexus with the activity for which coverage is provided." Chunmuang, 151 N.J. at 93.

Weeks argues that Collick's allegations fall within the scope of the professional liability endorsement because Collick is "seeking damages against Weeks for bodily injury allegedly caused by Weeks' (the construction manager's) negligence."  (See dkt. 255-24 at 14; dkt. 265 at 3.)  Conversely, Evanston argues that the professional liability endorsement

does not apply because "Weeks was not sued by Collick for rendering or [failing] to render professional services for others."  (See dkt. 260 at 6.)

The duty to defend, as articulated by the New Jersey Supreme Court in Voorhees, arises from the underlying complaint.  See Voorhees, 128 N.J. at 173.  This Court must look to Collick's allegations as a whole to determine whether the allegations fall within the scope of the endorsement.  The allegations in Collick's complaint, i.e., failure to warn of dangerous conditions, failure to promote proper safety rules, and failure to supply proper safety gear, all relate to Weeks' role as a construction manager at the Earle Project.  Indeed, "one of [Weeks'] primary duties as the construction manager [is] to provide and maintain a safe work environment."  (Dkt. 265 at 3.)  The Court thus finds that Collick's allegations have a substantial nexus to Weeks' rendering, or failure to render professional services in its capacity as a construction manager on the Earle Project.[8]  Absent an applicable exclusion, the professional liability endorsement, read in light of its plain and ordinary meaning, requires Evanston to defend claims "that result from the rendering or failure to render 'professional services' for others to which this insurance applies."  (Dkt. 255-10 at 4.)

### C.    Exclusions

The Court will now consider whether any exclusions apply such that Weeks is precluded from seeking coverage under the 2008 Policy's professional liability endorsement. "In general, insurance policy exclusions must be narrowly construed; the burden is on the

---

[8] The Court notes that it is further compelled to such a finding because "the interpretation of insurance contracts requires generous readings of coverage provisions. . . ."  Cobra Prods., Inc. v. Fed. Ins. Co., 317 N.J.Super. 392, 400 (App. Div. 1998).

insurer to bring the case within the exclusion."  <u>Chunmuang</u>, 151 N.J. at 95.  Here, Evanston

alleges that the workers compensation exclusion, employer's liability exclusion, and vehicle

exclusion preclude coverage in this action.  (<u>See</u> dkt. 260 at 6–9.)  The Court will consider

each exclusion in turn.

### 1.    Workers Compensation Exclusion

The workers compensation exclusion provides that:

> This insurance does not apply to "claim(s)": . . . Arising out of any obligation
> of any insured under workers compensation, disability benefits,
> unemployment compensation, employee benefits, pension, profit sharing,
> ERISA law or any similar law . . .

(Dkt. 255-10 at 6.)

Evanston argues that the workers compensation exclusion precludes coverage in this

case, and that such a conclusion "is consistent with the caselaw that [commercial general

liability] policies include both a workers' compensation exclusion and an employer's liability

exclusion."  (Dkt. 260 at 8.)  Weeks submits in its sur-reply that coverage for Collick's

LHWCA claim could be precluded under this exclusion; however, Collick's LHWCA

§ 905(b) claim "[is not] similar to a workers' compensation act claim because those claims

require proof of negligence to recover. . . ."  (Dkt. 265 at 3.)

Although Weeks is correct that Collick's LHWCA § 905(b) is the only remaining

LHWCA cause of action at issue, the LHWCA generally sets forth a statutory scheme in

which a plaintiff may be entitled to an award of no-fault workers' compensation or additional

recovery based upon a finding of negligence.  (<u>See</u> dkt. 272 at 14, n.8)  Both were at issue in

this action and were alleged in the underlying complaint.  (<u>See</u> <u>id.</u>; <u>see also</u> dkt. 66 at 3–5.)

Thus, at least one of Collick's underlying claims in his complaint arises out of an obligation to provide workers' compensation.  Applying the plain and ordinary meaning of the exclusion, the Court finds that the workers compensation exclusion precludes coverage as it relates to Collick's LHWCA claims.

### 2.    Vehicle Exclusion

The vehicle exclusion provides that:

> This insurance does not apply to "claim(s)": . . . Arising from the ownership, maintenance, use, or entrustment to others of any aircraft, "auto", or watercraft owned or operated by or rented or loaned to you . . .

(Dkt. 255-10 at 6.)

Evanston argues that the vehicle exclusion precludes coverage because Collick "sued Weeks in its capacity as its vessel owner employer" and "Barge 572 is a watercraft."  (Dkt. 260 at 7.)  Weeks argues in its sur-reply that the vehicle exclusion does not apply because "[a]ny allegedly unsafe condition would have been on the pier, not on the barge."  (Dkt. 265 at 3.)

The Court finds that the vehicle exclusion precludes coverage because the underlying complaint includes allegations that Weeks failed, in its capacity as the "owner, operator, lessor, charterer, subcharterer, maintainer, manager, controller, and/or owner pro hac vice of the vessel," to provide safe working conditions both on the vessel and its appurtenances, i.e., the crane and barge, under the Jones Act and LHWCA.  (See, e.g., dkt. 24 at 5, 6.)  Collick also alleges that "the unseaworthiness of the vessel proximately caused plaintiff to suffer injuries and illness . . ."  (See id. at 8.)  Thus, the underlying complaint contains allegations that Collick's injuries arose from, or were proximately caused by, Weeks' ownership,

maintenance, or use of the vessel.  The conduct of which Weeks is accused, namely failing to

provide a safe or seaworthy workplace on the vessel and its crane and barge, falls squarely

within the vehicle exclusion and thus precludes coverage for Weeks.

### 3.   Employer's Liability Exclusion

The employer's liability exclusion provides that:

> This insurance does not apply to "claim(s)": . . . Based upon or arising out of
> the injury to any present or former "employee" or "executive officer" of any
> insured, including but not limited to wrongful termination, discrimination, or
> any unfair employment practice.

(Dkt. 255-10 at 6.)

Evanston argues that the employer's liability exclusion precludes coverage because

"Weeks is [Collick's] payroll employer."  (Dkt. 260 at 7.)  Evanston further notes that the

different definition of an "employee" under the professional liability endorsement applies to

traditional employees like Collick.  (See id.)  Weeks argues that the endorsement's different

definition of "employee" excludes Collick because he did not perform professional services

on behalf of Weeks.  (See dkt. 265 at 4.)

The 2008 Policy's professional liability endorsement defines an employee as:

"temporary and leased staff working on behalf of and under direct supervision of you, but

only for 'Professional Services' performed for you."  See Background.I.B.2, supra.  (See also

dkt. 255-10 at 14.)  Professional services under the policy includes, inter alia, construction

management.  (See id.)  Here, there is no dispute that Collick worked on behalf of and under

the direct supervision of Weeks as a construction worker, or dockbuilder.  (See dkt. 219-1 at

1; dkt. 255-23 at 6.)  The Court thus finds that Collick's employment with Weeks as a

construction worker falls within the scope of the professional service—construction

management—that Weeks provided at the Earle Project.  The Court does not find any

genuine dispute of material facts that would lead this Court to conclude otherwise.

## CONCLUSION

For the above-stated reasons, the Court will grant Evanston's motion for summary

judgment and deny Weeks' cross-motion for summary judgment.  The Court will enter

judgment in favor of Evanston.  The Court will issue an appropriate order and judgment.


   s/ Mary L. Cooper

**MARY L. COOPER**
United States District Judge

**Dated:**      August 22, 2016